Samuels, J.
This cause is brought here by supersedeas to a judgment of the Circuit superior court of law and chancery for the county of Henrico and city of Richmond. The suit was an action of ejectment, in which Taylor’s lessee was plaintiff, and McCance was defendant. The jury empanneled for the trial rendered a special verdict.
The facts found by the jury present this case:
Thomas Green, on the 24th day of October 1836, executed a deed of trust to William S. Scott, whereby he conveyed to him for certain purposes, a lot of land in fee simple, lying in the city of Richmond, one moiety whereof is the subject of controversy in this suit. This deed of trust was delivered to the clerk of the Hustings court of the city of Richmond on the 24th of March 1841 to be recorded. George Taylor, the lessor of the plaintiff, on the 3d of March 1838, recovered a judgment against Thomas Green, in the Circuit superior court already mentioned, for damages, interest and costs. This judgment was taken by Green, by supersedeas to the Court of appeals on the 11th of April 1838. On the 31st of March 1840, Green executed another deed of trust to James Lyons and William S. Triplett, embracing the same property to secure certain debts due to the president, directors and company of the Bank of Virginia, and to the president, directors and company of the Farmers Bank of Virginia: This deed was delivered to the clerk of the Hustings court of the city of Richmond, April 10th, 1840, to be recorded. On the 21st of April 1841, Thomas Green executed another deed, conveying the same property to Jones Green, as trustee to secure Bernard Peyton against certain liabilities therein specified. This deed was recorded April 21st, 1841.
The jury find certain facts in regard to Scott, Lyons and Peyton, respectively, touching the question of *582 notice of Taylor’s judgment; and upon the facts so found, submit the questions of law to the court. In my opinion it is wholly immaterial to the decision of this case, whether the trustees and cestuis que trust, or any of them had notice or not, it is therefore unnecessary to state the facts found.
The deed of trust for the benefit of Peyton was assigned to the banks above mentioned, on the 28th February 1842 ; and on the 14th of May 1842, Thomas Green, William S. Scott, James Lyons and William S. Triplett united in a deed, whereby the legal title to the lot mentioned was vested in the said banks. This deed on the 23d of May 1842, was delivered to the clerk of the Hustings court for the city of Richmond to be rec'orded. On the-day of May ,1842 the banks conveyed to McCance, the plaintiff in error, the lot of land conveyed to them by the deed of May 14th, 1842; a moiety of which lot is the subject of controversy in this suit. The deed was delivered to the clerk of the Hustings court of the city of Richmond, May 27th, 1842, to be recorded. The jury find that the banks and McCance had notice of Taylor’s judgment at the time 'they took their conveyances respectively.
Thomas Green was declared and decreed a bankrupt on the 25th day of March 1842, and discharged as such July 11th, 1842. The judgment obtained by Taylor against Green was affirmed in the Court of appeals April 14th, 1845, with costs to Taylor; the affirmance was entered in the Circuit court May 22d, 1845. On the 13th of June 1845, Taylor sued out an digit on his judgment. On the 18th of the same month the judgment was docketed according to the statute of March 3d, 1843, Sess. Acts, p. 51.
The sheriff, under authority conferred by the writ of elegit, with the aid of a jury, amongst other things, *583 delivered to Taylor possession in law, of that moiety of the lot of land which is in suit here; and for recovery of actual possession this action of ejectment was brought and judgment rendered for the plaintiff.
The counsel for the plaintiff in error assail this judgment upon various grounds. These objections may be classed thus : Against the legal existence of Taylor’s judgment against Green, and against the lien incident thereto; against the validity of the writ of elegit under which the land recovered was extended; against the validity of the inquest taken under that writ; against the liability of the subject taken in execution to be so taken.
It is useless to consider whether certain objections made in the argument here could have been sustained on the trial, or in some other mode perhaps more appjopriate. The parties, by an order entered of record, consented that certain objections might be made notwithstanding the verdict, yet no one of these objections was made. The case therefore stands before us upon the facts found by the jury; and we can only look to the question whether Taylor’s title or that of McCance as found by the jury, is the better title.
The first link. in the chain of Taylor’s title is his judgment against Green; this gave Taylor a lien on the real estate whereof Green was seized at the date of the judgment. It is objected that this judgment and of consequence the lien its incident, ceased to exist by operation of Green’s discharge as a bankrupt under the act of congress approved 19th of August 1841, entitled an act to establish a uniform system of bankruptcy throughout the United States. In reply to this objection it may be said, that the lien in question is preserved by the express terms of the last proviso in $ 2. That proviso, so far as applicable to our case, is in these words, “ that nothing in this act con *584 tained shall he construed to annul, destroy or impair any liens, mortgages or other securities on property, real or personal, which may be valid by the laws of ,g£a¿eg respectively, and which are not inconsistent with the provisions of the second and fifth sections of this act:” (Taylor’s lien is not affected by the exception.)
The Supreme court of the United States, in Ex parte Christy, 3 How. S. C. R. 292, 318, 319, and in Norton's assignee v. Boyd, 3 How. S. C. R. 426, 436, 437, declare that the liens mentioned in the proviso remain in full force, and may be made available by the staté courts; that the United States district courts in bankruptcy should not interfere with their execution except under peculiar circumstances in those cases mentioned. In this case the court in bankruptcy did -not take cognizance of the subject, but left it to the state courts. It may be safely said that these decisions of the Supreme court have not placed limits too narrow upon the power of the federal judiciary. It must therefore be held that the judgment and the lien incident thereto, were not discharged by Green’s bankruptcy. They are left to the cognizance of the state courts to be enforced by appropriate remedies.
These authorities also sufficiently answer the objection that the form of the execution should have been varied to meet the change of circumstances produced by Green’s discharge as a bankrupt.
It is alleged that Taylor’s lien was lost by his omission to docket his judgment, according to the provisions of the statute, March 3d, 1843, Sess. Acts, p. 52, § 3. Before considering this objection, it must be observed that the estate held by McCance, before that statute took effect, was subject to the lien of Taylor’s judgment in case it should be affirmed. It was insisted, nevertheless, that Taylor, to preserve his pri *585 ority, should have docketed his judgment; that the statute operates retrospectively and gives a new rule of priority between lienors by judgment and purchasers before March 3d, 1843. This construction I hold to be in contravention of a well settled rule; to be at war with the obvious purpose of the statute. The rule referred to is, that statutes should be construed prospectively. See Dwarris on Statutes, 9 Law Lib. p. 34, 35; Elliott’s ex'or v. Lyell, 3 Call 234, (Tate’s edition;) Williams v. Lewis, 5 Leigh 686. There are two classes of judgments mentioned in the statute; to wit, those theretofore rendered, and those thereafter to be rendered; to protect purchasers against either class was the purpose of the legislature. The question recurs, What purchasers? The answer is obvious: Such purchasers as might be warned against making their purchases by the means provided; that is, docketing within one year after the statute, or after the judgment, as the case may require; or ninety days before the purchase; or by giving notice. Two of these modes are impracticable in the case of a purchase before the statute; that is, giving notice, or docketing ninety days before the purchase made. An ex post facto statute requiring notice to have been given or docketing to have been done, would be to require the party to foresee the passage of the statute and to conform to its provisions. To docket the judgment within one year after the passage of the law could be of no service to the previous purchaser. It will not do to ascribe to the legislature a merely capricious exercise of authority, interfering between parties whose relative rights were fixed according to law at a time already passed, requiring one party to do something, which, if done, could be no benefit to the other.
The provisions of section 4, in regard to judgments *586 rendered after the statute, can only apply to purcbases thereafter, because previous purchases duly would take precedence of the judgment withou£ . ye£ ^he provisions of section 3 and section 4 are identical as to the mode of giving notice or warning to purchasers. It must therefore be held that the purchasers to be protected are those only who became purchasers after the statute took effect.
There are peculiar circumstances in this case which must be decisive, if the reasons already given will not do. McCance claims as a purchaser with notice of Taylor’s judgment; he seeks to defend himself, however, upon the alleged ground that some parties through whom he derives title, were purchasers without notice and should be protected; and that the protection given to them should enure to his benefit. All parties through whom McCance derives his estate had conveyed their titles before the enactment of the statute of 1843, and, such. as they were, they vested in McCance. The parties alleged to have had no notice eonveyed without warranty or covenant of any kind; they acquired their titles subject to the lien, and conveyed them .subject to the lien as the law then was, and are in nowise responsible for the title. They can gain no advantage even if the lien be lost; and as between them and Taylor it would be most capricious and arbitrary to set aside Taylor’s lien when no good can result to them; to sacrifice his prior right on their account, when they are beyond the reach of loss or profit.
The objection to the writ for including the costs in the Court of appeals is answered by the case of McClung v. Beirne, 10 Leigh 394.
The objections to the form and substance of the writ of elegit, as against the real estate, so far as they are founded on the law for relief of bankrupts, have *587 been already sufficiently considered when looking to the operation of that law upon the judgment and its incident lien; the authorities show that the lien is left intact. The lien in this case is the right to sue out the writ of elegit. The whole subject is left as if the act of congress had not passed so far as this portion of Green’s real estate is involved. Nor is there any well founded objection to the form of the writ as against the goods and chattels of Green. The act of assembly prescribes the form of the writ used in this case; limitations and exceptions to the general terms of the writ are prescribed by other statutes; yet these limitations and exceptions are not noticed in the writ, nor is it necessary to apply to the court for a new judgment or for a special or limited execution; the exceptions in favor of landlords for rent, or in favor of poor debtors or other exceptions, the sheriff must respect at his peril, when informed of them. There, is no reason why he should not respect all exceptions when prescribed by competent authority; as by the act of congress establishing a system of bankruptcy.
The objections to the inquest have been in effect disposed of in considering the form and substance of the writ under which the inquest was held. It has been shown that the writ is valid; the inquest held under it and in accordance with its terms, except so far as varied by laws which must be obeyed, must also, be held valid. ■
It was further objected that the subject taken in execution is not liable to be so taken; in as much as previous to the date of Taylor’s judgment, Green had executed a deed of trust conveying the property to-Scott, and therefore was 'not seized thereof at that date. The reply is obvious. This deed of trust was not delivered to the clerk to be recorded until after the judgment was rendered; and thus as against Taylor it *588 was not valid. It is to be treated as if it had not been made, so far as Taylor the judgment creditor is concerned. 1 Rev. Code, p. 364, 5, § 12.
I am of opinion the judgment should be affirmed.
The other judges concurred in the ¡opinion of Samuels, J.
Judgment affirmed.